UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREW B., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, <br> Commissioner of Social Security, <br><br> Defendant. | Case No. 19 C 1592 <br><br> Magistrate Judge Sunil R. Harjani |

### MEMORANDUM OPINION AND ORDER

Plaintiff Andrew B. seeks judicial review of the final decision of the Commissioner of Social Security finding him ineligible for Supplemental Security Income ("SSI") under the Social Security Act. Andrew seeks reversal and remand of the final decision of the Commissioner of Social Security. The Commissioner moves for summary judgment seeking affirmance of the decision denying benefits. For the following reasons, the Commissioner's motion [24] is denied and the ALJ's decision is reversed and remanded for further proceedings.

### BACKGROUND

Andrew alleges disability due to Hodgkin lymphoma in remission, neuropathy, and history of drug and alcohol abuse. Andrew was diagnosed with stage III S Hodgkin Lymphoma in November 2012. He completed six cycles of chemotherapy in May 2013 and has been in remission since then. After his third cycle, his chemotherapy drug dose was reduced by 50% due to severe peripheral neuropathy and he completed his chemotherapy cycles with this dose reduction. Andrew graduated from high school and completed some college courses. His prior work was as a window washer and painter and he also did roof and gutter repair.

On January 30, 2018, the ALJ issued a decision denying Andrew's SSI claim. (R. 19-30). Following the five-step sequential analysis, the ALJ found that Andrew had not engaged in substantial gainful activity since his amended alleged onset date of October 13, 2014 (step 1) and that he suffered from the severe impairments of neuropathy status post treatment for lymphoma and chronic obstructive pulmonary disease. *Id*. at 21. Further, the ALJ determined that Andrew's mental impairments were non-severe and did not satisfy the Paragraph B criteria because he experienced only mild limitation in understanding, remembering, or applying information, mild limitation in interacting with others, mild limitation in concentrating, persisting, or maintaining pace, and mild limitation in adapting or managing oneself. *Id*. at 22-24. The ALJ then determined that Andrew's impairments did not meet or equal the severity of a list impairment (step 3). *Id*. at 24. The ALJ next found that Andrew retained the RFC to perform light work except that he: could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; could never climb ladders, ropes, or scaffolds; and must avoid concentrated exposure to wetness, pulmonary irritants, extreme temperatures, uneven terrain, slippery surfaces, and hazards. *Id*. at 24-29. At step 4, the ALJ concluded that Andrew had no past relevant work. *Id*. at 29. Given the RFC, at step 5, the ALJ determined that Andrew could perform other jobs identified by the VE including cashier, housekeeping cleaner, and mail clerk. *Id*. at 29-30. Based on this step 5 finding, the ALJ found that Andrew was not disabled. *Id.* at 30. The Appeals Council denied Andrew's request for review on February 4, 2019, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-6; *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## **DISCUSSION**

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a sequential five-step inquiry, asking: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the claimant's impairment meet or equal an impairment specifically listed in the regulations? (4) Is the claimant unable to perform a former occupation? and (5) Is the claimant unable to perform any other work in the national economy? *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "An affirmative answer leads either to the next step, or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski*, 760 F.2d at 162 n.2.

Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *See Villano*, 556 F.3d at 562; *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). In reviewing an ALJ's decision, the Court may not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the" ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and her conclusions. *See Steele v. Barnhart*, 290 F.3d 936, 938, 941 (7th Cir. 2002) (internal citation and quotations omitted); *see also Fisher v.*

*Berryhill*, 760 Fed. Appx. 471, 476 (7th Cir. 2019) (explaining that the "substantial evidence" standard requires the building of "a logical and accurate bridge between the evidence and conclusion"). Moreover, when the ALJ's "decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

Andrew challenges three aspects of the ALJ's assessment of his residual functional capacity. Specifically, he complains that the ALJ: (1) improperly declined to include the use of a cane for prolonged ambulation in the RFC; (2) failed to properly assess his fatigue and associated need to sit down when fatigued due to lightheadedness; and (3) neglected to explain why Andrew's mild mental limitations were not incorporated into the RFC assessment. Andrew also challenges the ALJ's evaluation of his treating oncologist's opinion and her assessment of his subjective symptom allegations. As explained below, the Court finds Andrew's first challenge to the RFC determination persuasive and remands this case for further administrative proceedings on that basis.

"The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue,* 539 F.3d 668, 675–76 (7th Cir. 2008); 20 C.F.R. § 416.945(a)(1). "As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). When the hypothetical question "does not include all of the limitations supported by medical evidence in the record, the decision of the ALJ that a claimant can adjust to other work in the economy cannot stand." *Young v. Barnhart*, 362 F.3d 995, 1005 (7th Cir. 2004). An ALJ's failure to address a claimant's need to use a cane may require remand. *See Thomas v. Colvin,* 534 F. Appx 546, 550 (7th Cir. 2013); *Oplinger v. Colvin*, 2015 WL 326809, at *6 (S.D. Ill. Jan. 23, 2015).

4

Andrew argues the ALJ erred in failing to account for a cane in the RFC and hypothetical posed to the VE and that such a limitation would likely have eroded the light occupational base. Without any stated exception, the ALJ afforded "great weight" to the opinion of Dr. Yacob Gawo, the state agency physician who reviewed the record and assessed Andrew's RFC at the reconsideration stage in October 2015. (R. 28, 95-109). Specifically, the ALJ wrote that he gave "great weight" to the assessments of the state agency medical and psychological consultants "who opined the claimant can perform light exertional work due to peripheral neuropathy with use of an assistive device for support on uneven and prolonged distances." *Id*. at 28. Despite placing "great weight" on the state agency medical and psychological consultants' assessment, the ALJ failed to include a limitation for use of a cane for prolonged ambulation in the RFC.

The ALJ's failure to include Andrew's need for a cane for prolonged ambulation in the RFC assessment and hypothetical to the VE, though crediting Dr. Gawo's opinion about it, is reversible error. There is medical evidence supporting a need for a cane for prolonged ambulation. On February 7, 2013, after Andrew's second round of chemotherapy, his oncologist Dr. David Grinblatt noted that Andrew was unable to walk on his heels, he had a wide gait, and his feet slapped on the ground consistent with mild food drop. (R. 510). Due to this peripheral neuropathy, Dr. Grinblatt reduced the dose of Andrew's chemotherapy by 50% for his remaining four cycles. *Id*. at 511. Thereafter, Andrew's peripheral neuropathy in his feet improved but did not completely resolve. *Id*. at 285-89, 291-95, 300-02, 304-06, 312-14, 322-23, 332-33, 351-52, 358-59, 522-23, 525-28.[1]

---

[1] On June 19, 2015, Dr. Grinblatt opined that Andrew could stand and/or walk less than two hours in an eight-hour workday due to his severe loss of sensation in his lower extremities and imbalance with walking due to chemotherapy. (R. 321). Dr. Grinblatt also noted that Andrew was at risk for falling and unsteady on his feet. *Id*. The ALJ gave Dr. Grinblatt's opinion "little weight" because the "course of treatment pursued by Dr. Grinblatt ha[d] not been consistent with what one would expect if the claimant were truly disabled" and it was inconsistent with his own treatment notes and other evidence in the record.

5

The notes from Dr. Roopa Karri's September 2015 consultative examination indicate that Andrew reported he has neuropathy from his mid calves down, he has an unsteady gait, he fell recently, and his legs get tingly and numb. (R. 327). Upon examination, Dr. Karri noted: Andrew had a forehead scar, bruise on the right side of his head and bruising in the left eye, he could not walk 50 feet without support, he had a small-stepped gait, he "needs a cane for balance," a sensory examination revealed decreased sensation to pinprick in the legs below the midcalves, and the Romberg test (balance) was positive. *Id*. at 329. Dr. Karri also noted Andrew's [o]verall effort and cooperation were excellent." *Id*.

The state agency physician Dr. Gawo, after reviewing the medical records available in October 2015, including treatment notes from Dr. Grinblatt and the report of the Dr. Karri, found a "medically required hand-held device is necessary for [Andrew's] ambulation." (R. 105). Dr. Gawo explained that Andrew "needs the use of a cane when walking on uneven terrains and for prolonged ambulation due to his [p]eripheral neuropathy with some gait and balance issues." *Id*.

Andrew's own subjective report supports a finding that his RFC required a limitation for a cane for prolonged ambulation. On December 4, 2014, Andrew completed an adult function, on which he stated he uses a "cane for trying to walk." (R. 219). In response to a question asking how his conditions limit his ability to work, Andrew wrote: "severe neuropathy in the feet limits my mobility and gait." *Id*. at 213. Andrew stated that he has trouble with his balance and falls easily. *Id*. He indicated that "walking in general is strenuous" and his "gait and balance have been severely affected." *Id*. at 217; *see also id*. at 100. A friend confirmed that Andrew uses a cane. *Id*. at 213. The friend also reported that Andrew has difficulty walking, balance issues, and has fallen several times. *Id*. at 225, 228. The ALJ briefly discussed Andrew's cane usage, stating "[t]here is

---

*Id*. at 28. Because reversal is warranted on the cane usage issue, the Court need not address Andrew's claim that the ALJ erred in giving little weight to Dr. Grinblatt's assessment.

6

one time where the claimant used a cane and had a small stepped gait, but his primary care records noted his gait was normal and nothing in those visits regarding use of a cane." *Id*. at 27. Nonetheless, the ALJ gave "great weight to the assessments of the DDS state agency consultants who opined the claimant could perform light exertional work due to peripheral neuropathy with use of an assistive device for support on uneven and prolonged distances." *Id*. at 28.

The Commissioner defends the ALJ's failure to include a limitation for a cane for prolonged ambulation in the RFC assessment on several grounds, none of which have any merit. He first argues that the ALJ was not required to wholly incorporate any specific opinion when assessing a claimant's RFC. *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) ("[T]he ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians."). True enough, but Andrew does not contend that the ALJ was required to adopt every restriction offered by Dr. Gawo. Critically, the ALJ made it clear that she accepted Dr. Gawo's opinion that Andrew has the functional ability to perform light work "with use of an assistive device for support on uneven [terrain] and prolonged distances" due to his peripheral neuropathy. (R. 28). The ALJ gave Dr. Gawo's opinion as to Andrew's need for a cane for prolonged ambulation "great weight," but then failed to include that limitation in the RFC without explaining why. The error in this case is that the ALJ omitted from his RFC determination and hypothetical question posed to the VE the cane limitation for prolonged ambulation assessed by Dr. Gawo whose opinion on this issue was expressly credited by the ALJ. Thus, while the Commissioner asserts that the ALJ "explained why she did not accept the opinion that plaintiff required a cane," the record demonstrates that the ALJ did, in fact, accept Dr. Gawo's opinion that Andrew required a cane for prolonged ambulation. Indeed, the ALJ wrote that the "requirement of a cane does not erode the residual functional capacity." *Id*. at 28. Again, the problem here is

7

that the ALJ failed to explain why she did not include that credited limitation in the RFC and hypothetical question.

In arguing that the ALJ properly excluded the use of a cane for prolonged distances from the RFC, the Commissioner points out that Andrew testified at the April 2017 hearing that he did not use a cane. (R. 70). The Commissioner's attempt to support the ALJ's decision by citing Andrew's testimony ignores the fact that the ALJ did not mention Andrew's testimony in this regard, let alone rely on this post-hoc rationale in assessing Dr. Gawo's opinion and formulating the RFC. *Steele*, 290 F.3d at 941 ("[P]rinciples of administrative law require the ALJ to rationally articulate the grounds for her decision and [we] confine our review to the reasons supplied by the ALJ."). Nevertheless, the record does contain multiple references to the fact that Andrew used a cane during at least a period of time. (R. 100, 219, 231, 329). Andrew was not asked whether he previously used a cane, just whether he currently used a cane. Moreover, the relevant issue is whether Andrew needs a cane for prolonged ambulation, especially since light work requires an ability to stand and/or walk for up to six hours of an eight-hour workday. The ALJ did not ask Andrew if he engages in prolonged ambulation or if he would need a cane for prolonged walking due to gait and balance issues. Andrew's testimony that he does not currently use a cane certainly does not mean that he could walk six hours out of an eight-hour workday without one.

The Commissioner also points out that the ALJ considered and gave little weight to Dr. Karri's observation at the consultative examination that Andrew could not walk 50 feet without support. Even so, walking 50 feet without a cane does not translate into an ability to walk or stand for six hours in a work setting. *See Thomas*, 534 F. App'x at 551 ("We have previously concluded, under nearly identical facts, that walking for 50 feet without a cane—a 'brief excursion'—does not demonstrate an ability to stand for 6 hours." (citing *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir.

2011))) ("Dr. Villanueva noted that Scott successfully walked 50 feet without a cane within the confines of her office, but that brief excursion hardly demonstrates an ability to stand for 6 hours (and neither does Scott's testimony that she could walk 2 blocks).")).

The Commissioner last argues that the ALJ accommodated Andrew's "underlying issues" by precluding Andrew from working on uneven terrain and to only occasional balancing. Doc. 25 at 5. But the ALJ did not explain the basis for his decision to only include an exclusion of uneven terrain in the RFC but not a cane for prolonged ambulation. In the face of the ALJ's acceptance of the Dr. Gawo's opinion that Andrew could perform light work "with use of an assistive device for support on uneven [terrain] and prolonged distances," the ALJ was obligated to explain why she did not incorporate a limitation for use of a cane for prolonged ambulation in the RFC assessment or in the hypothetical presented to the VE.

The ALJ's failure to incorporate a cane limitation for prolonged ambulation in her RFC determination and hypothetical question presented to the VE was not harmless. Vocational expert Richard Fisher testified at Andrew's hearing. (R. 79-83). The ALJ asked the VE whether jobs existed that Andrew could perform, assuming he could perform unskilled light work with no climbing of ladders, ropes, and scaffolds; occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; avoiding concentrated exposure to wetness, pulmonary irritants, extreme temperatures, vibrations, and hazards; avoiding work on uneven terrain or slippery surfaces in the workplace; and no work at unprotected heights or around dangerous machines. *Id*. at 80. The VE testified that with those restrictions, Andrew could perform the positions of cashier, housekeeping cleaner, and mail clerk. *Id*. According to Andrew, "these jobs would be difficult to perform while relying on the use of a cane to walk and balance while

9

trying to clean or perform other physical tasks at the same time." *Id*. at 279. If limited to sedentary work with the same restrictions, there would be no jobs Andrew could perform. *Id*. at 81.

The ALJ did not ask the VE whether the use of a cane for prolonged ambulation would preclude Andrew's ability to perform the identified jobs at step five or any other job. This issue is important because a key component of light jobs is the requirement of a "good deal of walking or standing" which is the "primary difference between sedentary and most light jobs." SSR 83–10, 1983 WL 31251, at *5 (January 1, 1983); 20 C.F.R. § 416.967(b). "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83–10, 1983 WL 31251, at *6. Because the VE was not asked whether his answers would be different if the hypothetical individual relied on a cane for prolonged ambulation, the Court cannot determine whether substantial evidence supports the ALJ's determination that Andrew has the RFC to perform the identified jobs. Indeed, the Commissioner does not argue that the jobs identified by the VE and relied upon by the ALJ are appropriate for an individual with Andrew's RFC who was further limited to needing a cane for prolonged ambulation. Had the ALJ incorporated a cane for prolonged ambulation limitation in the RFC and hypothetical to the VE, she may have concluded that Andrew was only capable of performing sedentary work. *Thomas*, 534 F. App'x at 550 ("Thomas could not perform any light work jobs if she needed to use a cane."). If Andrew had been limited to sedentary work, the agency's Medical Vocational Guidelines would dictate a finding of disabled. (R. 81).

Although the ALJ stated that Andrew's requirement of a cane for prolonged ambulation "does not erode the residual functional capacity," the question of whether Andrew's need for a cane for prolonged ambulation would erode the RFC is not determinative of the occupational base. (R. 28). Vocational testimony is needed to determine if a cane for prolonged ambulation would

10

have an impact on the light jobs identified by the vocational expert. Given that the record does not reveal that Andrew could perform the jobs identified by the VE with the use of a cane for prolonged ambulation, the Court cannot find that the ALJ's error in omitting this limitation from the RFC was harmless. *McKinzey v. Astrue,* 641 F.3d 884, 892 (7th Cir.2010) (holding error cannot be deemed harmless unless the Court can find "with great confidence" that the result would be the same on remand); *Parks v. Berryhill*, 2018 WL 3751985, at *6-7 (W.D. Wash. Aug. 8, 2018) (concluding the ALJ committed harmful error by failing to incorporate into the RFC the portion of the medical opinion of the state agency physician regarding left upper extremity limitations that were assigned "great weight," and "no vocational testimony in the record establishe[d] whether or not there would be jobs in significant numbers in the national economy that plaintiff can perform.").

Accordingly, this case must be remanded for reevaluation of the RFC. On remand, the ALJ shall include Andrew's need for a cane for prolonged ambulation in the RFC or explicitly explain why the credited portion of Dr. Gawo's opinion finding that Andrew needs the use of a cane for prolonged ambulation was not included in the RFC assessment. If the ALJ includes the use of a cane with prolonged ambulation in the RFC on remand, the ALJ is also directed to apprise any vocational expert relied upon of any additional RFC limitations adopted by the ALJ, and seek any expert testimony necessary to determine the availability of jobs that Plaintiff could perform in the national economy after considering that additional restriction.

Because this error regarding Andrew's use of a cane for prolonged ambulation is sufficient to warrant remand, the Court declines to address the remaining errors asserted by Andrew. On remand, Andrew may raise his arguments regarding any other alleged errors by the ALJ. *See* 20 C.F.R. §§ 416.1483, 416.1484 (when a case is remanded by a federal court for further

consideration, "[a]ny issues relating to your claim may be considered . . . whether or not they were raised in the administrative proceedings leading to the final decision in your case.").

## **CONCLUSION**

For these reasons, the Commissioner's motion for summary judgment [24] is denied and the ALJ's decision is reversed and remanded for further proceedings.

**SO ORDERED.**

Dated: April 30, 2020

_____
Sunil R. Harjani
United States Magistrate Judge